UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| STEPHANIE MICHELLE SELLERS, | }<br>}<br>} |
| Plaintiff, | }<br>}  Case No.: 7:20-cv-01056-ACA |
| v. | }<br>} |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | }<br>}<br>}<br>} |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Stephanie Sellers appeals the decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

**I.  PROCEDURAL HISTORY**

Ms. Sellers applied for a period of disability and disability insurance benefits on November 13, 2018. (R. at 16, 294–95). Ms. Sellers alleged that her disability began on February 23, 2018. (*Id.* at 178). The Commissioner initially denied Ms. Sellers claims on February 22, 2019. (*Id.* at 199). Ms. Sellers then requested a

hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 239–40). After holding a hearing, the ALJ issued an unfavorable decision on January 28, 2020. (*Id.* at 16–25). The Appeals Council declined Ms. Sellers' request for review (*id*. at 1–4), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. §§ 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgement for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. THE ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Sellers had not engaged in substantial gainful activity during the period from her alleged onset date of February 23, 2018 through December 31, 2019, which is the date she last met the Social Security Act's

insured status requirements.[1]  (R. at 18).  The ALJ found that Ms. Sellers' fibromyalgia, status post cervical fusion, degenerative disc disease of the lumbar spine, migraine headaches, generalized anxiety disorder, major depressive disorder, obsessive compulsive disorder, somatoform disorder, and personality disorder were severe impairments.  (*Id*.).  The ALJ then concluded that Ms. Sellers did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 18–20).

After considering the evidence of record, the ALJ determined that Ms. Sellers had the residual functional capacity ("RFC") to perform sedentary work with additional limitations.  (*Id*. at 20–23).  Based on this RFC and the testimony of a vocational expert, the ALJ found that Ms. Sellers was unable to perform any past relevant work.  (*Id*. at 23–24).  However, the ALJ found that jobs existed in significant numbers in the national economy that Ms. Sellers could perform, including as a surveillance system monitor, an inspector and sorter, and a production

---

[1] The ALJ explained that December 31, 2019 was the day Ms. Sellers last met the Social Security Act's disability insured status requirement and therefore Ms. Sellers was required to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits.  (R. at 16).  This finding is not at issue on appeal to this court.

and table worker. (R. at 24–25). Accordingly, the ALJ determined that Ms. Sellers had not been under a disability, as defined by the Social Security Act, between the alleged onset date through the date last insured. (*Id*. at 25).

## IV. DISCUSSION

Ms. Sellers argues that the ALJ improperly evaluated her subjective complaints of pain. (Doc. 15 at 9). Specifically, Ms. Sellers argues that satisfying the Eleventh Circuit's pain standard is sufficient to establish disability and that the ALJ's negative credibility finding is unsupported by substantial evidence. (*Id*. at 10–12). The court disagrees.

A claimant can establish disability through personal testimony about pain or other symptoms, but a claimant's statements alone are insufficient to establish disability. 20 C.F.R. § 404.1529(a). To establish disability based on testimony of pain or other subjective symptoms, a claimant must first satisfy two parts of a three-part tests: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition . . . can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations omitted). Once an ALJ identifies an underlying medical condition that could reasonably be expected to produce a claimant's subjective symptoms, the ALJ evaluates the claimant's statements about

5

the intensity, persistence, and limiting effects of the symptoms in relation to the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(1)-(4). If the ALJ discredits the claimant's subjective testimony regarding their symptoms, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The court will not disturb an ALJ's clearly articulated credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 717 F.3d 780, 782 (11th Cir. 2014).

At the hearing, Ms. Sellers testified that she suffers from severe back and neck pain, tingling in her extremities, migraines, and depression. (R. at 41–60). She testified that she treats her pain with narcotic pills, lidocaine patches, and heating pads. (*Id*. at 41, 55–56). However, she stated that those treatment options do not alleviate her pain and that, on a scale of one to ten, her pain is a "seven every single day." (*Id*. at 45). Ms. Sellers testified that her pain limited her abilities to sit, stand, and walk, and that most days she lays in her recliner or bed for at least three hours. (*Id*. at 55–56). In addition to her physical symptoms, Ms. Sellers also testified about her symptoms associated with her mental impairments. (*Id*. at 52). She stated she suffers from depression and that she has "10-12 [crying spells] a month if not more." (*Id*. at 53).

After reviewing Ms. Sellers' testimony, the ALJ found that Ms. Sellers' medically determinable impairments could reasonably be expected to cause her

alleged symptoms (*Id*. at 21). But the ALJ concluded that Ms. Sellers' statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. (*Id*.).

In making this finding, the ALJ considered all the evidence in the record and concluded that Ms. Sellers' symptoms were not as severe as alleged. (R. at 20–22). Specifically, the ALJ pointed to evidence indicating that Ms. Sellers' neck pain had improved since she underwent a cervical fusion in January 2018 and that the plates and screws from that procedure continue to be in "excellent condition". (*Id*. at 21, 1438–1439, 1745). Although Ms. Sellers continued to complain of neck discomfort after her surgery, she reported five months after her surgery that she "can deal with her neck pain." (*Id*. at 21; 1424). The ALJ noted that, other than pain medication, Ms. Sellers has not sought additional treatment for neck pain since her cervical fusion. (*Id*. at 21). The ALJ also pointed out that, in February 2019, Ms. Sellers asked her physician Dr. Ellison to provide her with a disability letter related to her neck pain. Dr. Ellison refused to provide such a letter, stating that there was a lack of objective evidence to support Ms. Sellers' complaints. (*Id*. at 21; 1572–1575

The ALJ acknowledged that Ms. Sellers continues to suffer from back pain that affects her ability to stand and walk. (R. at 22). The ALJ accounted for Ms. Sellers' persistent back pain in formulating an RFC of sedentary work with

additional limitations. (*Id*.). The ALJ also stated that, in May 2018, a physician recommended Ms. Sellers undergo back surgery to alleviate her pain, but that Ms. Sellers voluntarily chose not to have the recommended surgery. (*Id*. at 22, 1671, 1755).

As for Ms. Sellers' symptoms associated with her fibromyalgia and migraines, the ALJ noted that Ms. Sellers has found at least some relief for those symptoms through medication and injections. (*Id*. at 21–22; 1681–1695). She was prescribed additional medications for her fibromyalgia but did not take that medication due to cost. (*Id*. at 22; 1682). Ms. Sellers testified that she had recently started receiving injections for her migraines, and that those injections were effective at relieving her migraines within thirty minutes. (*Id*. at 22; 48–50).

The ALJ then addressed Ms. Sellers' mental impairments, including major depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, somatoform disorder, and personality disorder. (R. at 22). The ALJ noted that Ms. Sellers continues to go to therapy for her symptoms associated with these impairments and that she has "reported some improvement in her symptoms with therapy and with medication." (*Id*. at 22; 1608–1666). The ALJ acknowledged that Ms. Sellers' records indicate some increased symptoms associated with stress and family losses, but that her symptoms have largely remained at baseline with minimal medication. (*Id.*).

In addition to reviewing Ms. Sellers' objective medical records, the ALJ also considered Ms. Sellers' ability to participate in daily activities. (*Id.*). Here, the ALJ noted that Ms. Sellers "is independent in personal care and hygiene, can drive a car, can fix simple meals and do household chores, and can go grocery shopping as needed." (R. at 22; 349–346). The ALJ concluded that these activities indicate an ability to engage in a reduced range of sedentary work. (*Id.*).

Ms. Sellers first argues that satisfying the pain standard is itself sufficient to support a finding of disability. (Doc. 15 at 10–11). But the inquiry does not end once the ALJ identifies an underlying medical condition that could reasonably be expected to produce the claimant's subjective symptoms. After making such an initial finding, the ALJ must then evaluate the claimant's own statements regarding her symptoms against the other objective evidence in the record. *See* 20 C.F.R. § 404.1529(c)(1)-(4).

The ALJ followed that two-step inquiry here. As explained above, the ALJ found at the first step that Ms. Sellers' medically determinable impairments could reasonably be expected to cause her alleged symptoms. (R. at 21). However, the ALJ then found that, after considering the objective medical evidence in the record, Ms. Sellers' "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other

evidence in the record." (*Id.*). Therefore, the ALJ properly applied the Eleventh Circuit's pain standard in reaching his decision.

Ms. Sellers also argues that the ALJ's negative credibility finding is unsupported by substantial evidence. (Doc. 15 at 11). According to Ms. Sellers, there is "no evidence in the record to contradict [her] description of her conditions." (Doc. 15 at 12). Credibility determinations are within the province of the ALJ, and the court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin*, 771 F.3d 780, 782 (11th Cir. 2014). The ALJ in this case did not dispute that Ms. Sellers' severe impairments caused her complained-of symptoms. (*See* R. at 21). However, the ALJ found that Ms. Sellers' description of the severity and intensity of her symptoms was inconsistent with the objective medical evidence in the record. (*Id.*). Contrary to Ms. Sellers' contention, the ALJ cited to numerous examples, discussed above, in which Ms. Sellers' testimony did not line up with the evidence in the record. Therefore, the ALJ sufficiently articulated a reason for rejecting Ms. Sellers' subjective reports of pain and the court will not disturb that clearly articulated finding.

Lastly, Ms. Sellers claims that her medical records "show that she has constantly and consistently complained to her medical providers about the pain she alleges." (Doc. 15 at 11). But her statement is no more than an invitation for this

court to reweigh the evidence in this case and substitute its judgement for that of the ALJ, which the court cannot do. *Winschel*, 631 F.3d at 1178; *Crawford*, 363 F.3d at 1158–59. To the extent that Ms. Sellers claims the ALJ did not specifically reference other medical evidence in the record that she believes supports her allegations (*see* doc. 15 at 11–12), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision[] . . . is not a broad rejection which is not enough to enable [this court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (some alterations added). Despite not discussing some of the medical evidence that may be consistent with Ms. Sellers' testimony, the ALJ's recitation of the evidence of record was sufficiently thorough and accurate, and it demonstrates that he considered Ms. Sellers' medical condition as a whole. (*See* R. at 20–23).

## V.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Sellers' application for disability and disability insurance benefits, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 28, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE